FREDERICK PELLERIN, Plaintiff, *v.* BERTHA L. PELLERIN, Defendant.

Supreme Court, Broome Special Term, July 21, 1924.

**Husband and wife — action by husband to annul marriage on ground that plaintiff was induced to propose marriage by false statements by defendant that she had not previously been married — evidence insufficient to establish cause of action.**

In an action by a husband to annul his marriage upon the ground that he was induced to propose marriage to the defendant by false and fraudulent representations by her that she had not previously been married, *held*, that the plaintiff has failed to establish his cause of action; that he had knowledge of the defendant's previous marriage prior to proposing marriage; that with full knowledge of such facts he ratified and consummated his marriage with the defendant, both by cohabiting with her after such knowledge and by entering into a separation agreement.

ACTION to annul a marriage.

*Frank L. Wooster,* for the plaintiff.

*Roy C. McHenry (Edmund B. Jenks,* of counsel), for the defendant.

RHODES, J. Plaintiff brings this action to annul his marriage to defendant upon the gound that he was induced to enter into the

marriage contract by false statements and representations made to him by the defendant.

Plaintiff was engaged in business as a private detective. He met the defendant when she applied to him for a position in his office in the spring of 1921. He testified that after she had been working for him in the office for ten or twelve weeks, and some time in June, 1921, he proposed marriage and that the next day she accepted; that during the time he had known her and prior to proposing marriage, she had made various statements to him concerning her home and family, to the effect that her parents resided at Phillips, Me., and that she had several brothers and sisters. On direct examination he testified that on one occasion she informed him that her oldest brother " was the only one of her family that had been married." Later on, on direct examination, he testified that the defendant told him that " her brother was the only one of her family that had ever been married." On cross-examination plaintiff was asked: " Q. The other day you testified the statement your wife made was that her oldest brother was the only member of the family that was married. Is that what you testified to the other day? A. Words and substance. Q. Is that exactly what she said, that the oldest brother was the only member of the family that was married; is that what you testified to? A. Might be. Q. Today you say the oldest brother was the only member of the family that had been married? A. That was the words and substance. Q. Which are the words; the words you used the other day or the words you use today? A. I don't know. Q. Then you don't know as a matter of fact whether she said the oldest brother was the only member of her family that was married or that her oldest brother was the only member of her family that had been married; you have no definite recollection which way she made that statement? A. I haven't, no, sir." The record discloses no other statement made by the defendant to the plaintiff upon this subject. It is undisputed that defendant had previously been married; that within a short time after her former marriage she had given birth to a child; and that she had been divorced from her former husband. Plaintiff claims that he believed defendant's said statements made before he proposed marriage; that he relied upon them and was induced thereby to propose marriage. Assuming these statements to have been made by the defendant, I do not think they should be regarded as sufficient to warrant the annulment of the marriage contract upon the ground of false statements and fraudulent representations. It does not appear that the statements were made at the time the plaintiff proposed marriage, or were made by the defendant for the purpose of inducing plaintiff

to propose marriage. It is not clear from the language that the defendant meant to include herself when she stated that her brother was the only one of her family that had ever been married. Even though the statement be construed to include herself, and even though it were untrue, there is nothing to show that it was more than a casual remark induced by her natural disinclination to make known her past. The rule is well stated by Mr. Justice Page in *Butler* v. *Butler*, 204 App. Div. 602, as follows: " But while the jurisdiction to annul a marriage is based upon the ordinary equity jurisdiction of the court, the fraud which will induce the court to set aside a contract of marriage is something different from the fraud which will induce the court to set aside an ordinary contract which has been executed, or even a contract which is still executory. The contract of marriage is something more than a mere civil agreement between the parties, the existence of which affects only themselves. It is the basis of the family, and its dissolution, as well as its formation, is matter of public policy in which the body of the community is deeply interested, and it is to be governed by other considerations than those which obtain with regard to any ordinary civil contract *inter partes*. For that reason the courts have been strict in laying down and in maintaining rules as to the annulment of this contract, and in requiring a somewhat higher degree of proof before permitting it to be set aside for fraud, than is requisite for the annulment of ordinary contracts, and in insisting also that the fraud which shall invalidate the contract must be something more than a mere misrepresentation as to collateral matters.'' Several weeks after she had accepted him, when both applied to the clerk for a marriage license, the defendant stated under oath that she had not previously been married, but this was after the contract to marry had been entered into. Her explanation for making such a statement to procure the marriage license, is that she was induced to do so by plaintiff who was fearful that otherwise they would not be able to procure a license. It may be that if the plaintiff, before proposing marriage and with that in view, had asked the direct question as to whether or not she had been previously married, her misstatement might have constituted such fraud and misrepresentation as to have justified annulling the marriage. I do not think, however, that the marriage relation should rest upon so slight a foundation as to be upset because of an apparently casual remark made by one of the parties, not shown to have been understood as material in inducing the marriage.

A much stronger case than the one at bar was the case of *Glean* v. *Glean*, 70 App. Div. 576, where the action was to annul a marriage because of the concealment by a husband from his wife of the fact

that prior to his marriage he had unlawfully cohabited with another woman and had had children by her. In that case it was held that the wife, the plaintiff, could not succeed in such action. There the court said: " The general rule is, that marriage covers with oblivion antenuptial incontinence and lapses from virtue." The court further said: " Notwithstanding this general rule, the law authorizes the annulment of a marriage when one of the parties to it has been induced to consent, or enter into the contract, by fraud. In the State of New York, that authority is contained in the 4th subdivision of section 1743 of the Code of Civil Procedure, by which it is enacted that an action may be maintained to procure a judgment declaring a marriage contract void, and annulling the marriage where it appears ' that the consent of one of the parties was obtained by force, duress or fraud.' What amounts to such a fraud as would authorize a judicial decree annulling a marriage has not been and cannot be defined in general terms, but it has been regarded as a fraud relating to the essentials of a contract of marriage, namely, that the parties are competent to contract and to fulfill the obligation of that contract."

Defendant testified that when plaintiff proposed marriage, she informed him fully as to her previous marriage, maternity and divorce; that plaintiff not only had full knowledge of the facts but that on their wedding trip she stopped at the home where her child was living and told the plaintiff that she was going to see her child; that with knowledge of these facts plaintiff continued to live and cohabit with the defendant.

It further appears from the evidence, and is undisputed, that the parties entered into a separation agreement. Defendant claims that this constitutes a ratification on the part of the plaintiff of the marriage. Unquestionably this separation agreement would have this effect if the plaintiff then knew that his wife had previously been married and given birth to a child. *Butler* v. *Butler, supra.* The evidence upon all these questions is conflicting and disputed. The defendant is corroborated by two witnesses as to the fact that plaintiff knew the facts. It is incumbent upon the plaintiff to establish his cause of action by a fair preponderance of evidence. I do not think he has met this requirement. The marital status is too vital to the welfare of society to be disturbed except upon clear and convincing proof establishing the right thereto.

I accordingly find that plaintiff has failed to establish his cause of action; that he was not induced to propose marriage nor to marry the defendant in reliance upon the alleged false statements claimed to have been made by her. Further, that the plaintiff knew the facts prior to proposing marriage and was not induced by a contrary

belief to propose marriage or to marry the defendant; that plaintiff, with full knowledge, ratified and consummated said marriage both by cohabiting with the defendant after such knowledge, and by entering into a separation agreement with her thereafter. I direct judgment accordingly, with costs to the defendant.

Judgment accordingly.