## TERRITORY OF HAWAII *v.* BARBARA ROGERS.

## NO. 2651.

SUBMITTED JULY 8, 1947.  DECIDED JULY 31, 1947.

KEMP, C. J., PETERS, J., AND CIRCUIT JUDGE
WIRTZ IN PLACE OF LE BARON, J., ABSENT.

OPINION OF THE COURT BY PETERS, J.

This is a prosecution under the provisions of Revised
Laws of Hawaii 1945, sections 11210 and 11212, for keep-
ing a "disorderly house," to wit: "a house kept for the
purpose of public prostitution." The time laid in the com-
plaint is October 21, 1946, and the house allegedly kept
for the purpose prohibited by the statute is described
therein as located in a residential district in the city of
Honolulu known as Woodlawn, about five miles from the
center of town.

From the incidents and events involved, four criminal
complaints emerged; one charging one Legassey with hav-
ing, on October 21, 1946, solicited two male persons to have
unlawful sexual intercourse with this defendant, contrary

to the provisions of Revised Laws of Hawaii 1945, section 11674; one charging one Santana, a taxi driver, with having, on the same day, driven two male persons solicited by Legassey to the house in Woodlawn allegedly kept by this defendant for purposes of public prostitution, contrary to the provisions of Revised Laws of Hawaii 1945, section 11674; one against this defendant charging her with being, on said October 21, 1946, a common prostitute, contrary to the provisions of Revised Laws of Hawaii 1945, section 11771, and lastly the one charging this defendant with keeping a disorderly house, the basis of the prosecution in the instant case.

By mutual consent of the parties, the four cases were consolidated and tried together, resulting in a conviction in each case. We are informed by plaintiff in error that Santana appealed from his conviction and is represented by other counsel. Legassey did not appeal from his conviction and this defendant appealed only from her conviction of keeping a disorderly house.

The assignments of error were consolidated by appellant in her brief into the following specifications of error: (a) "That a Disorderly House under our statute, which is the common law equivalent of a bawdy house, is not shown by proof that a woman, the sole occupant of the house, engaged on one occasion in illicit intercourse with two men"; (b) "That in order to sustain the charge of keeping a disorderly house, it must be shown that the same is occupied by more than one immoral female in plying their illicit business of prostitution."

Preliminarily, it should be observed that there are no common-law offenses in Hawaii; that section 11210, quoted in the margin,[1] carries its own definitions of what are dis-

---

1 "Sec. 11210. Disorderly house defined. The following houses are disorderly, within the meaning of the provisions of this chapter, viz.:

orderly houses and that a disorderly house under our statute is not the common-law equivalent of a bawdyhouse. Were the prohibition of section 11210 simply against the keeping of a "bawdyhouse" *eo nomine*, in construing the statute it might become necessary to resort to the common-law definition of the term "bawdyhouse." Resort was had by this court in a similar case to the common-law definition of the term "house of ill fame" used in Revised Laws of Hawaii 1905, section 3162, prior to its amendment in 1923 by the laws of that year, chapter 166. But the statute is clear and unambiguous and does not require construction. It does not employ terms possessing common-law significance explainable only by resort to their common-law definitions except the term "disorderly house" and the statutory definitions of that term control. "Definitions recognized by the common law cannot be invoked where the legislature has, by express enactment, defined the terms employed in the statute."[2] Hence, assuming that upon the one occasion of the illicit intercourse with two men referred to in specification of error (a) defendant was the sole occupant of the house and that there is no showing that the house allegedly disorderly was occupied "by more than one immoral female in plying their illicit business of prostitution" asserted in specification of error (b), the plain terms of the statute and not the common-law definition of the term "bawdyhouse" applies. These same contentions were advanced before this court in the case of *Ter. v. Kimbrel*, 31 Haw. 81, in relation to the offense of keeping or maintaining a common nuisance, to wit, "any * * * building * * * used or resorted to for the purpose of

---

"Houses kept for the purpose of public prostitution; houses in which any indecent postures, or indecent, immoral or disorderly shows or sights are exhibited; houses kept for the sale of any intoxicating drink without license; houses in which gambling is permitted."

2 Knudson v. Jackson, 191 Iowa 947, 183 N. W. 391, 393.

prostitution * * *," and were determined adversely to the appellant.

It is true that the transitive verb "keep," the past tense of which is used in section 11210, connotes continuity and the offense of keeping a house for the purpose of public prostitution is an offense of a continuing nature. But "The statute does not require that the place be used habitually or for any considerable length of time for the prohibited purposes in order to constitute the offense in question."[3] Nor is there a variance in proof that it appears that the offense may have been committed upon the day alleged and prior thereto.[4]

The necessity of showing continuity was satisfied. It appeared that the defendant, a common prostitute, leased the premises from month to month and occupied the same; that men, strangers to both the procurers and the defendant, were solicited to resort to the place for the purpose of prostitution and that thereafter the defendant committed acts of prostitution therein with the men so solicited. It is inferable from the proof of prior solicitation that the procurers were either the defendant's agents or that the existence of the defendant's house as a house of prostitution was a matter of common knowledge and they acted upon that knowledge. Moreover, the solicitation was a part and parcel of the course of events which culminated in the illicit intercourse.

While the contention has not been presented, it might be said that the specifications of error challenge the sufficiency of the evidence to sustain a finding that the house was being kept for the purpose of public prostitution in contradistinction to private prostitution and upon that

3 Quoted in Territory v. Peter, 22 Haw. 132, from The State v. Lee, 80 Iowa 75, 45 N. W. 545.

4 Ter. v. Kimbrel, 31 Haw. 81.

assumption we shall consider the specifications from that standpoint.

The adjective "public" qualifying the noun "prostitution" as employed in the statute is used, in our opinion, in its ordinarily accepted sense of pertaining to or affecting people at large or a community and in its adjective use qualifying the noun "prostitution" has relation to public morals. It may be that fornication or adultery when committed secretly or clandestinely in the privacy of a room without more, although offending morality, lacks the element of offense to common decency which the term "public prostitution" implies. The adjective "public," however, is a relative term and whether prostitution is public in contradistinction to private is a pure question of fact.

The evidence heretofore referred to in support of the issue of continuity is equally applicable to the issue of public prostitution. Public solicitation to prostitution offends public morals. In addition there was evidence of group transportation of the men solicited, driven and accompanied from town to Woodlawn by their procurers, and acts of conduct in approaching, entering and leaving the house sufficient to cause a reasonable observer to believe that the visitors resorting to the house visited it for the purpose of prostitution. Coupled with the evidence of prostitution, this constituted public prostitution.

Where prostitution is practiced in a manner so that it affects public morals it constitutes public prostitution, as that term is used in Revised Laws of Hawaii 1945, section 11210.

Judgment affirmed.

*E. J. Botts* for plaintiff in error.

*A. R. Hawkins*, Assistant Public Prosecutor, for the Territory.